UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| SANDRA M. H.[1], | ) |
|   Plaintiff, | ) ) ) |
| v. | ) Case No.: 4:19-cv-00271-TWP-DML ) |
| ANDREW M. SAUL,<br>Commissioner of the Social Security,<br>Administration, | ) ) ) ) |
|   Defendant. | ) ) |

## Report and Recommendation on Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its appropriate disposition. As addressed below, the Magistrate Judge recommends that the District Judge REVERSE and REMAND the decision of the Commissioner of the Social Security Administration that plaintiff Sandra H. was not disabled.

## Introduction

Sandra applied in 2016 for Disability Insurance Benefits under Title II of the Social Security Act, alleging that she has been disabled since December 5, 2015. Her application was denied initially and on reconsideration; after an administrative hearing held August 22, 2018, administrative law judge Cristen Meadows issued a

---

[1]   To protect privacy interests of claimants for Social Security benefits, the Southern District of Indiana has chosen to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions. The plaintiff will therefore be referred to by her first name in this Report and Recommendation.

decision on November 9, 2018, that Sandra was not disabled at any time from her alleged onset date to the date of the decision. The Appeals Council denied review on October 24, 2019, rendering the ALJ's decision for the Commissioner final. Sandra timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Sandra argues that the ALJ's determination about her residual functional capacity is not supported by substantial evidence because the ALJ (1) did not properly evaluate opinions by Sandra's physical therapist and chiropractor about her functional capacity, (2) made a patently wrong credibility determination, and (3) failed to evaluate the statement by Sandra's longtime friend about her daily activities and abilities.

The court will first describe the legal framework for analyzing disability claims and the court's standard of review and then address Sandra's assertions of error.

## Standard for Proving Disability

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Sandra is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of

2

substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she

is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her age, work experience, and education (which are not considered at step four), and her RFC; if so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## **Standard for Review of the ALJ's Decision**

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but it does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the

evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

Before addressing Sandra's specific assertions of error, the court will first describe Sandra's work history and the ALJ's sequential findings and then address some of the evidence about Sandra's medical impairments and treatment.

### I. Sandra has a lengthy work history.

Sandra was born in 1956, was 59 years old at the alleged onset of her disability in December 2015, and was 62 years old as of the date of the ALJ's decision. Sandra's onset date corresponds to the date she stopped working at a job she had had for the preceding 17 years as a machine operator. (R. 34). As of her last day of actual work, Sandra's employer first placed her on, and paid for, six weeks of leave and then placed her on and paid for six months of disability. (R. 35). Her job, operating many different types of machines, including drills presses, soldering apparatus, and lathes, was fast-paced, required constant standing, lifting up to 20 pounds, and constant reaching for and handling of parts. (R. 36-37, 208). Sandra testified that she became physically unable to perform her job, primarily because she could no longer constantly stand. One or the other of her legs would start tingling and go numb, her back would spasm, and she would need to sit for at least 15 or 20 minutes before she had the strength to take up her tasks again: "[After sitting for 15 or 20 minutes,] it'll ease up enough to where I could go do – you know,

5

do it a little bit more, but by the end of the day, I was crawling home. I could barely get out of the car, it would be so bad." (R. 38).

## II. The ALJ decided that Sandra was capable of performing her past work as a machine operator.

The ALJ's sequential analysis stopped at step four because she found that Sandra was not disabled because she could perform her past relevant work. Her sequential analysis proceeded as follows.

At step one, the ALJ found that Sandra had not engaged in substantial gainful activity since her alleged onset date in December 2015, and that the 2016 income she received reflected her employer's payment of disability benefits. At step two, she determined that Sandra's severe impairments were scoliosis, degenerative disc disease of the lumbar spine with radiculopathy, and obesity. She found no listings were met or medically equaled at step three; Sandra does not challenge the ALJ's decisions at steps one through three.

For the RFC, the ALJ decided that Sandra is capable of light work as defined at 20 C.F.R. § 404.1567(b)—meaning she can lift no more than 20 pounds at a time, frequently lift and carry objects that weigh up to 10 pounds, and engage in a "good deal of walking or standing," generally understood as a capability to walk and/or stand at least six hours in a work day—but must observe certain postural limits (only occasional climbing ramps, stairs, ladders, ropes, or scaffolds and only occasional balancing, stooping, kneeling, crouching, or crawling).

Based on the RFC and the testimony of a vocational expert, the ALJ found at step four that Sandra's past relevant work corresponded to the DOT's description of

6

a "valve maker," and that Sandra remained capable of performing the tasks of that job. The job could not be performed, however, if Sandra were limited to sedentary work that precluded standing and walking for more than two hours in a workday. (R. 52).

### III. Sandra suffers from severe scoliosis and underwent treatment to allow her to function at work.

As the ALJ recognized, Sandra has a lifelong history of scoliosis, which has worsened over the years and contributed to degenerative disc disease. A record from 1979 describes her scoliosis as severe and S-shaped, with her spine bending to the left at L2-L3 and then back to the right at L4-L5. (R. 293-94). Radiology reports from June 2017 (not reviewed by state agency physicians) showed that with non weight-bearing imaging, she has moderately severe S-shaped scoliosis at the thoracic/lumbar level with her spine bending to the right at T9 and then to the left at L1 with a "substantial rotary component," and with weight-bearing imaging, the severity of the bends in the spine increased significantly. (R. 731-72). An MRI of the lumbar spine taken in June 2017 (also not reviewed by state agency physicians) describes the upper lumbar scoliosis as severe, and it shows advanced spurring, bulging disc material, and contact with nerve roots at different places along the lumbar spine. (R. 735-36). In August 2017, an orthopedic specialist described Sandra's scoliosis as degenerative and with multilevel disc disease and stated that because of the severity of her scoliosis, a scoliosis expert must be consulted to determine whether surgical treatment is even possible. (R. 697). This record—not reviewed by agency physicians—supports Sandra's testimony that an orthopedic

specialist told her he "wouldn't touch" her back surgically because it is too severe and he did not know "anyone for sure that would be able to fix it." (R. 48). Sandra also testified that she has lost several inches in height over the years because of the worsening of her scoliosis.

The record reflects Sandra's consistent and concerted effort to undergo treatment that allowed her to work despite her worsening condition. She has seen a chiropractor (Dr. Sullivan) about every two weeks for nearly 30 years and began seeing a physical therapist in late 2016 (Mr. Hoehn) to work on strengthening her leg and arm muscles to take pressure off her back. (R. 39). Dr. Sullivan completed a medical source statement in 2015 in conjunction with Sandra's stopping work, and both Dr. Sullivan and Mr. Hoehn completed one-page medical source statements in mid-2018, providing their professional opinions that Sandra can stand/walk less than two hours in an 8-hour work day. Dr. Sullivan noted that as of December 2015, Sandra's functional capacity was severely limited, and she could not perform even sedentary activity because of the severity of her scoliosis and degenerative disc disease. He noted in 2018 that Sandra's prognosis was poor, and Mr. Hoehn stated in 2018 that Sandra had reached maximum functional gains but continued to engage in physical therapy to maintain those gains. (*See* R. 706, 726).

## IV.    Sandra's Assertions of Error

As described at the outset, Sandra argues that the RFC is not supported by substantial evidence because in formulating her RFC, the ALJ (1) made a patently wrong credibility determination, (2) did not properly evaluate the opinions of

Sandra's chiropractor and physical therapist, and (3) failed to address the statement by Sandra's longtime friend about her physical capacity. The court agrees that the ALJ erred and that reversal and remand is required.

### A. The ALJ's evaluation of the reliability of Sandra's statements about her functioning is patently erroneous.

At the hearing and via function reports in the record, Sandra described the deteriorating nature of her functioning to the point where she simply could not stand in one place for any length of time allowing her to perform the tasks required in her job, even though she had worked very hard with a chiropractor to maintain functioning. If Sandra's description of her limitations is believed, then she is not capable of light work, may not be capable of sedentary work, and she cannot perform her past job.

The ALJ did not find Sandra's statements about her functioning to be reliable, but the ALJ did not provide any good reasons to support that finding. A fair reading of the ALJ's decision reflects her view that because Sandra has suffered from scoliosis throughout her life and because she was able to work for years preceding December 2015 when she stopped working, then she should be able to continue working. An ALJ's determination of the weight to give a claimant's subjective complaints is entitled to great deference and may not be overturned unless "patently wrong." *See Summers v. Colvin,* 864 F.3d 523, 528 (7th Cir. 2017). Here, the court strains to find any support for the ALJ's negative assessment of the value of Sandra's statements, and the paltry reasons provided by the ALJ are illogical.

The ALJ commented, negatively, about Sandra's use of a cane because it was not prescribed. But a lack of a prescription is not by itself a reason to doubt a claimant's credibility about why she uses a cane to help in ambulation. *See Parker v. Astrue,* 597 F.3d 920, 922 (7th Cir. 2010) (finding it "absurd" that an ALJ doubted the claimant's descriptions of her functional deficits because she used a cane even though it was not prescribed by a physician); *Terry v. Astrue,* 580 F.3d 471, 477-78 (7th Cir. 2009) (claimant's use of walker despite lack of doctor's prescription does not "on its own" make a claimant's description of her abilities not believable).

The ALJ suggested that Sandra did not really stop working because of the deterioration in her physical functioning because a form completed by her employer noted that Sandra had "retired." Sandra explained that she, indeed, had applied for early Social Security retirement benefits at age 62, but that her employer had placed her on and paid for short-term disability in December 2015 when she was no longer capable of the physical requirements of the job. Indeed, the ALJ had acknowledged at the outset of the decision (before her description in later pages why Sandra's statements were not reliable) that Sandra's receipt of about $11,000 in income in 2016 *was due to a disability determination* under her employer's disability benefits plan. (R. 17).

The ALJ stated that the medical evaluation and treatment records were not consistent with the functional deficit levels Sandra described, but the ALJ did not obtain any expert medical review of imaging and MRIs that were taken in 2017 and which revealed the deteriorative nature of Sandra's scoliosis and its severity. The

10

ALJ unreasonably played doctor in deciding that these new medical findings are not consistent with Sandra's statements; a medical expert may find that they are fully consistent with Sandra's statements. *See McHenry v. Berryhill,* 911 F.3d 866, 871 (7th Cir. 2018) (internal quotation and citation omitted) (ALJ "impermissibly assessed the MRI report on his own without the assistance of a medical expert. We have said repeatedly that an ALJ may not play doctor and interpret new and potentially decisive medical evidence without medical scrutiny.")

Similarly, the ALJ suggested that because Sandra's treatment had been "managed" through medication and chiropractic treatment and there was no follow-up regarding surgical intervention, the medical evidence was inconsistent with Sandra's statements about her functional abilities. But the ALJ omitted mention of the orthopedist's report that he was not willing to operate on Sandra's back because of the severity of her scoliosis (a report that was not reviewed by agency physicians). Before suggesting that Sandra's statements of her functioning should be discounted because she failed to undergo appropriate treatment, the ALJ should have acknowledged whether the treatment was reasonably available to her and obtained medical opinion about that matter.

Finally, the ALJ found that Sandra's continued efforts to work detracted from the reliability of her statements, rather than acknowledging that those efforts, which one could reasonably describe as even heroic, made her more credible. *See Stark v. Colvin,* 813 F.3d 684, 689 (7th Cir. 2016) (claimant with a good work history and "dogged efforts" to continue to work is entitled to "substantial credibility").

11

Because the ALJ failed to provide good reasons supported by the record to doubt the reliability of Sandra's descriptions of her limited functioning, the court finds that the ALJ's evaluation is patently wrong. Reversal and remand is required.

### B. The other errors can be addressed on remand.

The other errors raised by Sandra can be addressed on remand: the ALJ's evaluation of the opinions by Sandra's chiropractor and physical therapist and the ALJ's failure to evaluate the third-party statement by Sandra's longtime friend. As addressed above, the ALJ did not obtain medical expert review of the MRIs and other imaging conducted in 2017 nor the report of the orthopedist that he was not willing to operate on Sandra because of the severity of her scoliosis. That failure largely contributed to the lack of any logical support for the ALJ's negative credibility evaluation. It also affects whether there is substantial evidentiary support for the ALJ's decision that the chiropractor's opinions (after approximately 30 years of treatment) and the physical therapist's opinion regarding Sandra's inability to maintain a standing posture were not entitled to weight. With medical expert review, it is possible the ALJ's analysis will materially change. On remand, the ALJ can also correct her failure to address the third-party statement of Sandra's friend and can address that statement in light of insight provided by expert medical review of the later records documenting the severity of Sandra's scoliosis and its deteriorating effects on her spine and functions.

12

## Conclusion

For the foregoing reasons, the Magistrate Judge recommends that the District Judge REVERSE and REMAND under sentence four of 42 U.S.C. § 405(g) the Commissioner's decision that Sandra was not disabled.

Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file objections within 14 days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

IT IS SO RECOMMENDED.

Date: January 29, 2011

*Debra McVicker Lynch*
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana


Distribution:

All ECF-registered counsel of record by email through the court's ECF system